**Commonwealth v. Baker**

*Frederick F. Coffroth, District Attorney,* and *Terry R. Bossert, Special Deputy Attorney General,* for Commonwealth.

*James B. Yelovich,* of *Kimmel & Rascona,* for defendant.

COFFROTH, *P. J.,* October 15, 1974—This is an appeal by defendant from his summary conviction before a justice of the peace for violation of the Pennsylvania Sewage Facilities Act of January 24, 1966, P.L. (1965) 1535, as amended, by building a dwelling house without a sewage disposal permit and after such permit had been refused, in which defendant was sentenced to pay costs, a fine of $200, and in default of payment to be imprisoned for ten days.

The essentially uncontradicted evidence is that defendant made a timely application for a permit to install a septic tank system for residential sewage disposal on defendant's vacant lot situate in Salisbury Borough. At that time, the borough had no locally appointed inspector and the borough authorities therefore requested the Department of Environmental Resources to furnish an inspector to pass upon the application. In response, Mr. Robert J. Black was assigned for that purpose. His inspection of the premises revealed an excessively high water table which, under the regulations, disqualified the property for a permit, which was, there-

fore, refused. Thereafter, at the urging of defendant or others interested in his behalf, Mr. Black inspected a second test hole on the lot which revealed less water present, but still high water table to disqualify the property for permit.

Defendant was notified by letter of the refusal of the permit, of the reason therefor, and of his right of appeal. Defendant took no appeal. Instead, he disregarded the refusal of the permit and, without seeking legal advice, but apparently encouraged by friends and borough officials, he proceeded to build his house on the lot which is now substantially on the way to completion, but which is without a sewage disposal system and is unoccupied.

Defendant is charged with violating section 7(a) of the Pennsylvania Sewage Facilities Act, supra, which provides in relevant part as follows:

"No person shall install an individual or community sewage disposal system *or construct any building for which an individual or community sewage disposal system is to be installed* without first obtaining a permit indicating that the site and the plans and specifications of such system are in compliance with the provisions of this Act.": 35 P.S. §750.7(a). (Emphasis added.)

It is clearly evident from reading this law and from the facts of the case that this defendant has constructed a building for which an individual sewage disposal system is to be installed, that he has done so without a permit, and that he has violated the law of Pennsylvania. The violation is clear and free from doubt, and defendant has, by his voluntary and intentional disregard of the law, subjected himself to the penalties prescribed.

The defense does not challenge the facts, but raises certain legal and equitable issues which we will now consider.

## DE MINIMIS INFRACTION

Defense counsel contends that this court is empowered to dismiss the charge against defendant, even though he is guilty thereof, because defendant has not caused any harm nor threatened any harm, bearing in mind that he built no sewage disposal system and does not occupy the house, and that the infraction of the law is therefore so slight (de minimis) that we ought to disregard it. Counsel points to section 312 of the Crimes Code of December 6, 1972, P.L. 1068, 18 Pa. S. §312, which provides as follows:

"(a) General rule.—The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

"(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

"(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

"(3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

"(b) Written statement.—The court shall not dismiss a prosecution under paragraph (a)(3) of

this section without filing a written statement of its reasons."

It is subparagraph (a)(2) of section 312, above quoted, which is the basis of defendant's contention. In considering it, we shall assume that it is applicable to summary offenses arising under laws other than the Crimes Code. See code section 106(c) and (e), and section 107(a).

In order to invoke this defense, it must affirmatively appear that defendant's conduct does not cause or threaten in a substantial way the harm or evil which the law was designed to prevent, or does not fall within the purpose which the law was designed to accomplish. Defendant assumes that the conduct which the statute was designed to prohibit and to punish is installing and operating a sewage disposal plant where none should be installed; and that since defendant did not do that, the mere absence of a permit is de minimis. But he errs in that interpretation of the Sewage Facilities Act. While it is true that the broader goal of this legislation is the prevention and prohibition of *pollution,* long experience teaches that without a regulatory system of preconstruction licenses or permits pollution readily gets out of hand, and the Commonwealth and the citizen become enmired in the problem of undoing construction already made. So, it is not only the *installation* of a system, nor the *use* of a system, nor *pollution* which the permit provisions of the law are aimed at. They are aimed at requiring the *permit* in every case where sewage disposal is or will be needed. And the permit is required in advance of *installation* of the disposal system *or* in advance of *construction* of a building for which a system is *to be installed.* The real evil against which the statute is aimed is installation or con-

struction without the permit and thereby by-passing the Commonwealth's enforcement system.

A means of regulation commonly employed in police power enactments is the requirement that the person carrying on the regulated activity acquire a license or permit to do so in aid of the regulation: University Park Cinemas, Inc. v. Windber Borough, 28 Somerset 1, 8 (1972). There is no doubt today that the disposal of sewage by the private person or enterprise is subject to regulation and control by governmental police power. And our courts have sustained provisions of laws for enforcing and punishing violation of permit provisions even though there is no evidence of any actual or threatened pollution. It is sufficient that the permit requirement bear a reasonable relationship to the public health and be violated. See Commonwealth ex rel. Chidsey v. Black, 363 Pa. 231 (1949); Commonwealth v. Leswing, 135 Pa. Superior Ct. 485 (1939). When that is true, as it is here, performance of the proscribed acts without the required permit is per se harmful to the public, and public injury is justifiably assumed. See Pennsylvania P.U.C. v. Israel, 356 Pa. 400 (1947); Mead Johnson & Co. v. Martin Wholesale Distr., 408 Pa. 12 (1962).

The permit requirement is an immensely practical and fair one from the standpoint of both the government and the citizen, for it gives both an advance opportunity to determine their respective rights and obligations before taking serious and costly steps. The government is thus assured of the necessary control over the activity to be regulated and the citizen is given a reasonable chance to avoid costly and irrevocable error.

Therefore, the permit is required in all cases before, not after, pollution or threatened pollution is

shown and, even if everyone "knows" that the requirements will be met in a particular case, all parties are still entitled to a full official investigation and report before reaching that final conclusion. As the court said in Commonwealth ex rel. Chidsey v. Black, supra, (at page 240):

"If a municipality, for the declared purpose of decreasing fire hazards, should by ordinance provide that no person should erect any building . . . without first securing official approval of building plans, the fact that a person proposed to erect a building entirely of fire-proof material would not absolve that person from the duty of obtaining the required permit."

Consequently, acting without the permit is not a slight, trivial or de minimis infraction—it is a mortal wound to the very heart of the regulatory system. To allow it is to allow precisely what the statute was aimed at preventing—proceeding without permit. We cannot therefore dismiss under section 312.

## EQUITIES

The equities of the case are, in one sense, with defendant, since he has a house which he cannot use without lawful sewage disposal. Unless he can find some way to obtain a permit for an approved sewage disposal system or unless a public sanitary sewer system is constructed, his investment and his hopes and ambitions and those of his family for their home are in jeopardy. Everyone of heart must sympathize.

In another sense, the equities are against him, because he deliberately incurred the risk he now faces after he was notified that the water table on

his own land was too high and that his application for permit was denied after investigation.

Violations of such permit requirements are punishable even though unintentionally and ignorantly undertaken. The offenses are regulatory in nature (malum prohibitum), not evil in themselves (malum in se), and therefore guilty intent or knowledge is immaterial: Commonwealth v. Sonneborn, 164 Pa. Superior Ct. 493 (1949). But as is already clear in this case, defendant cannot claim ignorance or lack of knowledge. He knew of the permit requirement, filed a timely application, was clearly notified of refusal, yet deliberately went ahead. He testified that he was encouraged and advised by friends and borough officials. Such advice to defy the law is hard to understand. Defendant would have been better advised to seek the advice of a lawyer. But even incorrect advice by a lawyer in a matter of this kind is no defense. See Commonwealth v. Stone, 78 D. & C. 230 (1951). The public interest is paramount, and we are required, in construing laws of this kind, to favor the public interest over any private interest: Act of November 25, 1970, P. L. 707, as amended, 1 Pa. C. S. §1922(5).

Thus, although sympathy is evoked for defendant's plight, we see no basis to challenge or to criticize refusal of the permit and there is substantial basis for fastening culpability for the situation upon defendant, so that, in the final balancing, the scales of true equity do not tip in his favor.

## METHODS OF ENFORCEMENT

The statute gives to the Commonwealth a choice of remedies for violation: either criminal prosecution: Act of January 24, 1966, P.L. (1965) 1535, 35

P.S. §750.12, as in this case, or a restraining order or injunction: (35 P.S. §750.12) or both. The Commonwealth can choose the method of proceeding. See Commonwealth ex rel. Chidsey v. Black, supra, at pages 240, 241. Therefore, the court is not empowered to direct that the Commonwealth in this or any given case should have proceeded in one way and not the other. In fact, decision in this case does not eliminate defendant's liability to later injunctive relief should he elect further defiance of the law. Even were he acquitted here, the Commonwealth could proceed to restrain him.

Defendant also had a choice following refusal of the permit to appeal that refusal to the department, (35 P.S. §750.12a). He was notified in writing of this right. We do not know how fair and reasonable all of the rules, regulations and standards are which the department uses in passing upon permit applications. But those matters are not in issue here, and are not relevant to our consideration. Had defendant wished to challenge those applied in this case, he should have exercised his right of appeal from denial of the permit to the secretary of the department.

It cannot be denied that today the ordinary private citizen is becoming surrounded by a web of permit and license laws making many ordinary transactions of life which were once freely pursued without governmental interference now impossible without governmental permission. But as we live we learn and the earth becomes more crowded and life becomes more complex and it cannot now be denied that governmental control and regulation over sewage disposal is in the public interest and that such public interest must take priority over the well-nigh absolute freedoms of a day gone by which are no longer fitting and adequate to modern life.

## PENALTY

The statute provides for a "fine of not less than one hundred dollars ($100) and costs, and not more than three hundred dollars ($300) and costs, to be paid to said county, or in default thereof, shall be confined in the county jail for not more than thirty days.": 35 P.S. §750.12. In this case, the justice of the peace imposed a fine of $200, costs and ten days imprisonment for default.

In an appeal from a summary conviction, it is our duty to try the case anew, to hear the evidence and arguments of counsel, and thereupon to enter such judgment as is warranted under the law and the evidence. Accordingly, this court is responsible for determining the sentence: Commonwealth v. Ansell, 26 Somerset 248, 259, 56 D. & C. 2d 759 (1971). It is against the policy of this court, upon an affirmance of a summary conviction, to reduce the sentence even though it is one which we might not have imposed in the first instance; it is not in the interest of judicial policy to encourage appeals in order to obtain a reduced penalty from a different judge. This is not, of course, such an absolute rule that we will blind ourselves to or permit gross injustice: Commonwealth v. Ansell, supra, at page 258. Reduction may be ordered for compelling reasons. We do not believe that the sentence of the justice of the peace here is unreasonable nor does injustice. But we are sufficiently sympathetic with defendant's financial plight as a result of his present predicament to reduce the fine to the minimum amount. That can be done without materially altering the punitive or deterrent effect of the judgment.

## CONCLUSION

Defendant has violated the law and a conscien-

tious court cannot join him in that nor place the stamp of approval upon it. To do so would effectively destroy the enforcement provisions of the Pennsylvania Sewage Facilities Act and the permit system it establishes for enforcement, because we would then have to excuse everyone who violates that law by proceeding without permit. "Otherwise equal protection of law becomes an illusion, and the interests of society as a whole are sacrificed to an arbitrary and unprincipled accommodation of preferred individuals.": Commonwealth v. Yoder, 27 Somerset 155, 158 (1972).

It is most regrettable that defendant so acted as to place himself in his present very difficult position. But this court is without power to extricate him. We surely hope that some proper method can be found to afford him sewage disposal at his property.

### ORDER

Now, October 15, 1974, defendant's conviction is affirmed and we find defendant guilty as charged. Defendant is sentenced to pay the costs of prosecution and a fine of $100, and in default thereof to undergo imprisonment in the Somerset County jail for ten days as provided by law.